The next case for argument this morning is 1639-03 and 1718-68, Jose Romero-Larin v. Jefferson B. Sessions, III Good morning, Mr. Welton. Good morning, and may it please the Court. Cleland Welton of Quinn Emanuel, Urquhart & Sullivan, pro bono counsel to Petitioner Jose Noel Romero-Larin. This is the rare asylum case where the uncontested facts and administrative record leave no room for this Court to do anything other than vacate the agency's rulings. The IJ expressly found Mr. Romero's testimony to be credible, and that testimony establishes that he received specific and immediate death threats from the extraordinarily violent Mara 18 gang in El Salvador. First, a known Mara 18 member confronted him on the street and told him that the gang had been hired to kill him because he had been getting involved in politics through the Coordinating Committee of Churches and the FMLN party. Second, Mr. Romero's own cousin, who was also a gang member, warned his mother that he was going to be killed by the gang. It was an order out already to kill him. He had better leave El Salvador before they carry it out. These uncontested facts are more than enough to qualify Mr. Romero for asylum. I'd like to actually begin with why this Court must at minimum vacate the Board's orders and remand for further consideration. And that's because the government hasn't contested. Can I ask you a question which seems to be fairly significant here? Is this a de novo review or is it something else? Well, there's a number of issues in the case, Your Honor. Some of them are reviewed de novo. Some of them are reviewed for substantial evidence. What about the past persecution? That issue is reviewed de novo because while we have a settled legal standard under this Court's decision in Corrado, it requires that specific and immediate threats of death constitute past persecution. So the standard is settled and there's no dispute about the facts. Mr. Romero credibly testified, the IJ found him credible at page 7 of the addendum. He testified that he received these threats and so the question is whether those threats under the settled standard constitute past persecution. But those are factual findings, aren't they? It's the application of a settled legal standard to the facts that are settled by the record that no one disputes what the facts are. So it's a purely legal question whether those facts satisfy this standard that the Court has established. But before you even get to the past persecution issue, the government hasn't disputed the two key questions as to the future persecution issue. Don't we end up at a dead end or all that? As to which question, Your Honor? As to eligibility for asylum. Well that's ultimately a discretionary decision that the agency would make on remand under all the facts, but we think that the agency needs to make that call because... Hold on, hold on. They've decided he's not eligible for asylum at this point, right? Yes, Your Honor. Right. And so when... I get your point about the intermediate questions, but the final decision, the United States Supreme Court says, it's a substantial evidence rule, right? It's true as to factual findings, but as to questions of law, I don't know if a review applies. But, you know... If there's substantial evidence to support the agency, you know what I'm referring to when I say substantial evidence? Yes, Your Honor. We're supposed to affirm the agency. That is, if something could go either way, we're supposed to affirm the agency, right? Yes, Your Honor. And so on some of the issues here, the factual issues, we would take the position that the record actually compels the conclusion in our favor. But I just want to say that you don't need to get to that question because the government doesn't dispute the two key issues as to the future persecution claim. And that's number one, the government doesn't dispute that the agency, the board, did not have jurisdiction to decide whether Mr. Romero had an objectively reasonable fear of future persecution. The IJ didn't decide that question. The board doesn't have authority to decide that question in the first instance on appeal. And so, as the government acknowledges in footnote three of its brief, that issue really has to be remanded to the agency to decide in the first instance. And then second, on the question whether the Salvadoran government can control Mr. Romero's persecutors, the agency, both the IJ at 11 of the addendum and the board at page two of the addendum, both of those parties, both of those actors decided that he failed the control prong, the control element, because he hadn't shown the Salvadoran government can control the arena party. Now, the government doesn't defend that reasoning. The government says, well, actually, the Salvadoran government can control the MARA 18. Now, that's wrong as a matter of fact. The evidence in the record is quite clear that Mr. Romero, I'm sorry, the Salvadoran government has no control over the MARA 18. But setting that aside, this court can't affirm on that alternative ground under Chenery, under this court's other more recent decisions, you can't affirm an agency ruling on a ground that the agency itself did not adopt, right? So the agency didn't decide the control of the MARA 18, so you can't affirm on that ground. And when you take the objective reasonableness issue and you take that together with the control issue, both of those have to be vacated. And that leaves Mr. Romero with a live asylum claim that has to be decided by the agency on remand. So at the bare minimum, you need to vacate the board's orders and remand for consideration of those two issues on remand afresh. But that said, the court can and should go further, because as I said, the record is quite clear that the agency, I'm sorry, the Salvadoran government is unable to control, unable to protect Mr. Romero from the MARA 18 gang. And this is shown in State Department reports. What connects the dots here? The problem I have with the case is what tells us the reasons that he was being threatened? The gang member himself said, this is I think page 24 of the addendum, maybe it's earlier. No, I'm sorry, it's page 16 of the addendum. This is Mr. Romero's credible testimony. He says, the gang member told me that a politician paid the MARA 18 to kill me because I was getting involved in politics. It comes from the gang member's own mouth. And that's found credible. There's no reason not to believe it. The government doesn't challenge it. Am I wrong, though? Didn't your client testify that he wasn't involved in politics and had no idea how he could comply with the threat? Well, he testified that he didn't view himself as being involved in politics. But what matters on this kind of claim is not his personal views, but rather what his persecutors impute to him. So the persecutors view him as, the record says, a red, or as being associated with the FMLN through his work with the Coordinating Committee of Churches. That imputed political opinion, and there's no dispute that that imputed political opinion is sufficient to justify an asylum claim. So it doesn't matter whether he viewed himself that way, and it doesn't matter that he didn't know how to comply with the threats either, because it wasn't, stop doing politics or we're going to kill you. It was, we're going to kill you because of your politics. And that is amply sufficient to qualify as past persecution. And the testimony about the gang member's threats amply satisfies the nexus test. But I would note to the Court that that's another issue that the So that issue also needs to be remanded if the Court does not decide it in my client's favor. Is the old 2007 threat really relevant at all in this case? The 2007 threats are sort of part of the backdrop. They're obviously not the catalyst for him leaving the country. He left because of the back-to-back threats in 2010. But they do show that there was a political element to his persecution, to the threats. They were anonymous and a bit vague, so if he'd left just because of the 2007 threats, then maybe he wouldn't have a good claim. But they were part of the backdrop. They show that they told him to stop being involved in politics. He kept doing it. A couple of years later, he gets the more specific threats, and he is told that he's going to be killed if he doesn't leave the country. Were the 2010 threats sufficient? Yes, Your Honor. So they were definitely sufficient under this Court's case law in that a specific and immediate death threat, if it's credible, constitutes past persecution. These threats were clearly specific. They were delivered by two known members of one of the most notorious and violent gangs in the entire country. They said specifically to his face and to his mother's face, we're going to kill you because of your politics if you don't leave the country. That is a specific threat, and it's an immediate threat as well because he was told not that we might kill you sometime later. He was told, his mother was told that the gang had already been paid to kill him. The order had already gone out. It was a live warrant on his head. Now tell me again. I think you said it earlier, but I've now looked at the BIA. The BIA acts like, make sure I'm in the right opinion. I think I am. Yes, I am. The BIA acts like your because of is not one of their findings. It says respondent was approached by a known M18 gang member who told respondent that doesn't name the politician had hired M18 to kill him, period. And when you tell that to me, you always add because of his politics or because of this. Now tell me what you get the because of. Well, so there's two things. From the BIA's opinion, they don't reach that issue. They don't reach the nexus issue. The IJ does reach it. The board does not decide the nexus issue. And the government agrees with me about that too. If you look in their brief, they don't contest the nexus point, which is the because of point. So that issue has got to be remanded to the board. But just on the merits of it, you get the answer. The board doesn't say anything about it because they don't address it. But if you get to the merits, you look at page 16 of the addendum. This is lines 15 and 16. This is his testimony. He says, he told me that some politician paid the Mara 18 to kill me because I was getting involved in politics. That's where the because comes from. It comes from Mr. Amaro's testimony. I think that's what you said earlier and I was behind you finding it. So you, you believe the BIA rules solely on how seriously the threats are, right? Um, yes, Your Honor. Not extreme enough. Their words. They, they, they rule that it's not extreme enough to constitute past persecution. That's wrong under Corrado because there's no extreme element in the test. The test is specific and immediate. We have specific and immediate here. Um, they're also wrong on the objective reasonableness issue because number one, they shouldn't have reached it. And number two, if they had reached it, they applied the wrong standard. Uh, the test, the test for objective reasonableness is simply whether a reasonable person would feel, uh, threatened by, uh, or excuse me, would feel that he had a reasonable possibility of being persecuted if he returned to the country. And a 10% chance is sufficient, uh, under the Supreme Court's case law. And we would submit that any reasonable person receiving two death threats from the ARP MARA 18 would say, well, I have a reasonable chance of being killed. I'd better get out of here. Um, there are no further questions. I'll reserve the time. Very well. Morning, Mr. Lutz. Good morning, Your Honors. May it please the court, Alexander Lutz, the respondent. Your Honors, there are a lot of issues going on in the briefing in this case, but in fact, it's fairly straightforward. The court needs to resolve only three issues in both petitions for review. With respect to the first petition, the only two issues are one, whether this record would compel any reasonable fact finder to conclude that regardless of what may happen to Mr. Romero in the future, the mistreatment he's already suffered rose to the extreme level of persecution, even though nobody touched him. And second, whether the record would compel any reasonable fact finder to conclude that the government would be, uh, completely helpless to protect him from the people he fears, where in fact the basis of his claim is that he was working closely with the local government to try to curb gang violence. With respect to the second petition for review, the last issue is whether the board abused its discretion when it denied a motion to reopen that showed merely that Mr. Romero's father had tragically been killed by a gang member, but contained no additional evidence or context to connect that to the First, regarding the issue of past persecution, this record would not compel any reasonable fact finder to conclude that the threats Mr. Romero received rose to that extreme level that defines persecution. This court's held that persecution is a fluid concept, um, but the mistreatment must be quote unquote extreme. And I'm citing to this court's opinion in Shulla there, not merely intimidation or harassment. In fact, in cases where petitioners have faced death threats, this court has held in Corrado that, uh, it may be that not all alleged threats of death necessarily amount to persecution. The situation may be different, for example, where a fact finder concludes that threats are exaggerated, nonspecific, or lacking in immediacy, or in law, another case where a petitioner received death threats, this court stated that threats alone constitute persecution only in a small category of cases. And the gist of these cases, your honor, is that it is certainly possible for a death threat to constitute persecution, but there have to be some additional factors around it. This is a fact-driven determination, so the agency has to look at all the facts involved and, and see what, what really the, uh, the alien was confronted with. You know, a case that the petitioner cites, Diallo, out of the 11th Circuit, actually provides a pretty good counterexample. That was a case where threats were found, uh, to be imminent and to constitute persecution on their own. In that case, the petitioner and his family, uh, were at a political meeting when soldiers broke in, and let me see here, they killed the petitioner's brother, they beat the petitioner himself and his father, they detained him, processed him in the detention facility, and told him that he was going to be executed the next day, but he was able to escape. And in that case, the court said, we didn't need to stay around and see what would happen, that alone was enough. In this case, we don't have facts coming anywhere close to that. Mr. Romero received a couple of telephonic threats in 2007. He says he doesn't know who it was, isn't sure if it was a gang member. He said he himself didn't give it enough credence that he changed his behavior, he just sort of brushed it aside. And then in 2010, he was confronted by somebody who's a member of a gang and said, uh, that a politician had paid the gang, Mara 18, to kill you, but you haven't been harmed yet because you're related to a member of the gang. And then months later, his mother received a phone call from a family member who was in the gang saying, uh, gang members are looking for you and have been ordered to kill you. But he was never detained, he was never confronted by anybody who actually was in a position to kill him. He was never put in immediate danger. In this case, under the context of all the facts, the record would not compel any reasonable fact finder to conclude that these incidents alone rose to the extreme level of persecution. And just to address Your Honor, Judge Thunheim's question, this is an issue that gets substantial evidence review. This court in a number of cases has applied a substantial evidence test, not just to the issue overall of asylum, but to the past persecution issue itself. Shola, La, De Castro Gutierrez, these are all cases where this court has said, this is a substantial evidence issue, that's the standard they apply. The petitioner, Mr. Romero, cites a couple of cases, Cubios and Alavez Hernandez, and he says, well those cases show that applying a legal standard to undisputed facts is a legal question that's reviewed de novo. And that may generally be true, but those cases are distinguishable. Because in those cases, the immigration judge either didn't find that the full issues that the board looked at, and then the board looked at past persecution either in the first instance or in a broader scope than the immigration judge had looked at it. And when the petitioners in those cases said, well that's impermissible fact finding on appeal, the board can't do that, the court said that the board in those cases had accepted the immigration judge's findings of fact about specific issues in the case, but then when it went beyond what the in that situation, the board was applying a legal standard to the immigration judge's fact findings. That's not what happened here. Here the immigration judge found as a matter of fact, looked at all the things that Mr. Romero had testified to and said, that's not extreme enough, that's not persecution, and the board affirmed that finding. So consistent with this court's precedent, that's a factual issue that gets reviewed under the substantial evidence standard. How does the BIA treat that question when they review the judge's decision? Their standard is clear error, Your Honor. So they review factual findings for clear error and issues of law and discretion de novo. But here what they did is they acknowledged the immigration judge's factual findings, and then they said we find no error of fact or law in the immigration judge's decision. But what's crucial here is that the immigration judge didn't just make decisions about individual facts and leave the past persecution issue up to the board to decide, as in the cases that Mr. Romero relies on. Rather the immigration judge found as a matter of fact that past persecution had not been demonstrated on this record, and then the board affirmed that finding. So before this court the standard isn't just are there facts in the record that could suggest that this constituted past persecution. The standard is whether any reasonable fact finder would have to conclude that. So the second issue that the court is called upon to decide in Mr. Romero's first petition for review is the inability and unwillingness finding, Your Honor. I just want you to clarify one thing. Is there any dispute about the facts in this case? Well, yes, there is, Your Honor. But I'm afraid I have to give a more nuanced answer to that question. Because Mr. Romero was not found to have testified incredibly, the agency takes what he said as true. So the contents of his testimony, the truthfulness of his testimony, that's a given. But whether or not those bare facts meet, you know, for example, whether they show persecution or not, that's a factual finding. So we would say that in that context, yes, the facts are in dispute. But the bare elements of what Mr. Romero says happened to him are not in dispute. Does that answer Your Honor's question? That's good. Fair enough. So turning to the inability and unwillingness finding, Your Honors, the question here is whether or not the government would condone Mr. Romero being harmed or would be completely helpless to protect him from the harm that he fears. Mr. Romero really makes two arguments here, I think. First, he focuses on the Salvadoran government's difficulty controlling gangs writ large. And then he says that the agency didn't properly consider that aspect of his claim and instead focused on the Arena Party. The record just doesn't bear that out. The immigration judge said the M18 gang is the weapon delivering the threats, but the contract for the petitioner's death was made by members of a political party. And the board said any possible harm that he would face would be at the hands of the Mara 18 gang, which delivered the threats. And then it also went on to look at the political party angle of it. Mr. Romero's claim isn't that gangs specifically are targeting him of their own volition. His inability or unwillingness of a government to control private actors is a factual question that the agency is required under this court's precedent to consider in the light of the entire record. The agency here had to look at both of these two components. The agency had to look at both sides of this claim, the gang involvement and this political party that had hired the gang. So it's not really fair for Mr. Romero to fault the agency for doing in that respect what was required to do. And secondly, Your Honor, we would note that the Salvadoran government's overall difficulty controlling gangs is not alone sufficient to establish this element of Mr. Romero's case. You know, if that were true, every El Salvadoran national who said that they were afraid of gangs would not have to submit any quantum of proof on that issue. The Salvadoran government's overall difficulty is not enough because this is a fact-driven inquiry under the claim is that he was working with local government authorities to attempt to curb gang violence. They put together the coordinating committee of churches. They sponsored events where he was working with judges and priests and I think a commissioner of the civil police. The record here might support the possibility of his being harmed in the future, but it definitely does not compel any reasonable fact finder to conclude that the government authorities he was working with to curb gang violence would be helpless to protect him. So the last issue in the case, Your Honors, is the motion to reopen. The motion to reopen is reviewed under a deferential abuse of discretion standard. So the question is whether the board completely misinterpreted the facts or disregarded the law in rendering its decision. But the Supreme Court has held that there are at least three grounds on which the board does not abuse its discretion if it denies a motion to reopen. Failure to produce previously unavailable material evidence, which means evidence that's likely to change the outcome of the case if it's sent back to an immigration judge. Failure to establish prima facie eligibility for the type of relief that the alien would be seeking below. And the last would be demonstrating discretion, excuse me, that discretion should be exercised in the alien's favor. Here Mr. Romero's petition for review just showed that his father had been killed by gang members, which is undisputedly a tragedy. But the question for Mr. Romero and what he was required to prove with this new evidence is that that had some bearing on his case, such that if it were remanded to the immigration judge, he might obtain a different outcome. But there's no evidence in his motion that connects his father's death to his claim. What about the provision in the affidavit from his wife in which she says that when the killing occurred, she was to tell her husband that the same thing was going to happen to her and the child? Why isn't that relevant? Well, I think it is relevant, Your Honor, but I don't think that it's enough to show that the board abused its discretion here. We don't have any evidence in the record that this was the same gang that was after Mr. Romero. We don't have any evidence as to who these people individually were other than that they were members of some gang. Even if it was the same gang, and that's making an assumption, we don't know why this gang targeted Mr. Romero's father. Maybe Mr. Romero had his, or Mr. Romero's father had his own disputes with the gang. And the reason we're speculating here is because there's just a gap in proof in the record. We don't know why this particular gang member targeted Mr. Romero's father. It's not really relevant what the gang member said in that moment, but Mr. Romero bore a heavy burden of proof. Motions to reopen, Your Honor, are disfavored in the immigration context, and so he has a heavy burden to show that this motion should be granted. So we can make inferences around the edges, but Mr. Romero did not meet his burden where there's no evidence as to who these people were, why they targeted his father, what they were after, how this connects to him. Well, isn't there some evidence because of the comment to tell her husband that that would some possibility that's related to the earlier death threats? Well, Your Honor, again, of course there's some possibility, but our ability to come up with that speculation right now doesn't mean that the agency abused its discretion by not reaching that conclusion. For example, we could speculate that Mr. Romero's father had a dispute with the gang that was so severe that the gang killed Mr. Romero's father and then threatened Mr. Romero's wife and child and Mr. Romero indirectly as a consequence of that other dispute. And that would really have no bearing on what's going to happen to Mr. Romero if he's returned to El Salvador or what happened to him in the past. So because we're able to make these speculations, we would respectfully suggest that there's certainly some evidence in the record, but not enough to show that the board abused its discretion here. That alone is dispositive of the motion to reopen, Your Honors. But there's also the fact that he didn't put forward any new evidence under the unable or unwilling ground, the fact that he didn't show that he would be three different independent bases to deny this motion to reopen. And so for the court to reverse the agency on that ground, they'd have to find that the board abused its discretion on all of them, really. That the board abused its discretion overall in denying this motion when it gave multiple independent reasons to do it. Your Honors, unless there are any further questions from the court, we respectfully request that the court deny both petitions for review. Thank you, Your Honors. Very well, Mr. Lutz. Thank you, Your Honors. Just a few points in response. First, on the issue of de novo review of the past persecution issue, the government has waived their argument on that point. If you look at page 15 of the brief, they have no argument on that issue at all. Their failure to make any brief waives the issue. The issue is reviewed de novo. You should find that the facts that the government concedes are established by Mr. Romero's credible testimony satisfy the past persecution. Counsel, the Supreme Court and Congress have told us what the standard review is. That controls even if they don't file a brief, right? Presumably so. Yeah, proceed. Just moving to the ability to control issue, the government wants you to look at the belief that it considered ability to control the Mara 18. I can't read any of these opinions, any of the three of them, to say anything about control of the gangs. They talk about control. It's pretty clear, though, that the board understood that the theory was that Arena had hired Mara 18 to do the killing, right? That's right. So isn't it pretty obvious that the I don't think that's obvious at all, Your Honor, to be honest. There's nothing in the record about any of the evidence that we submitted. The State Department reports the USAID reports Mr. Romero's testimony about being terrified of the gangs and unable to report the threats to the police. They don't mention any of that testimony. They only refer to the Arena politician. And if the standard that this court has stated is helpless to protect the potential victims of violence, that's in like the Menjivar case and a few others, the victims of the violence here are Mr. Romero and the people who are going to inflict the violence, the people who are going to be the persecutors, are not the Arena Party, just the Arena Party. It's at least the Arena Party and the gang, the Arena Party working together with the gang. If the government is unable to protect Mr. Romero from the Mara 18, well, he's probably going to be murdered by the Mara 18 when he returns to the country, if he's forced to go back. And so that's really the issue, whether the government can protect him from the people who are threatening him. And the answer, number one, is no on the record. And number two, even if you don't believe that, at least has to be remanded because the agency just didn't make any finding on that issue. And there's no way I can read any of the three opinions in this case to make that finding. On the ability to control issue, I would also like to direct your honors to the decisions of the Second Circuit, the Fourth Circuit, the Ninth Circuit, all of which have relied on evidence akin to what we have here to reverse the board and on that basis to find that the Salvadoran government is unable to control the gangs. They've reversed the board and said, as a matter of law, as a matter of fact, on records virtually identical to what we have here, that the Salvadoran government can't control the gangs. That's the desire. That's their own case from the Second Circuit on the same 2010 State Department report that's in the record here, made exactly that finding. This circuit's never done that though, right? No, not with respect to El Salvador, but the records in those cases were virtually identical from what I can tell to what's here. And just as a matter of law, I don't see how any other result could obtain here. And for those reasons, we ask that you vacate the board, grant the petitions, and remand for further proceedings on the asylum claim. Thank you. Thank you, Counsel. We appreciate your briefing and argument. The case will be submitted and decided as soon as possible.